IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

**MAGNESS OIL COMPANY,**                                                    **PLAINTIFF**

**V.**                            **CASE NO. 3:21-CV-03062**

**KASH'S CORNER, LLC**                                                    **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

This action arises out of a contract dispute between Plaintiff Magness Oil Company and Defendant Kash's Corner, LLC. Defendant urges this Court to dismiss Plaintiff's suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Doc. 21.

After reviewing Plaintiff's Amended Complaint (Doc. 17), Defendant's Motion to Dismiss (Doc. 21) and Brief in Support (Doc. 22), Plaintiff's Response in Opposition (Doc. 29), and Defendant's Reply (Doc. 33), and for the below reasons, the Court **DENIES** Defendant's motion (Doc. 21).

## I.    BACKGROUND

Plaintiff Magness Oil is an authorized distributor of Valero Petroleum products. Defendant Kash's Corner operates a convenience store located in Long Beach, Mississippi.

On December 15, 2015, the parties entered into a Fuel Consignment Contract ("Contract") under which Defendant provided Plaintiff with the "exclusive contract rights to supply fuel to said location" in exchange for a $25,000 upfront payment. *See* Doc. 17, pp. 7–9. The parties agreed Plaintiff would consign gasoline and diesel fuel products to Defendant and compensate Defendant for each gallon sold.

1

At some point between executing the Contract and June 23, 2021, Defendant stopped purchasing Plaintiff's fuel products.[1] Plaintiff contends Defendant's refusal to purchase Plaintiff's fuel products constitutes a contractual breach. *Id.* at 4. Defendant argues the Contract does not obligate Defendant to purchase gasoline and fuel. *See* Doc. 22, pp. 3–4. Instead, Defendant maintains, the Contract merely requires it sell only those gasoline and fuel products supplied by Plaintiff—that is, if Defendant chooses to sell such products in the first place. *Id.*

## II.   LEGAL STANDARD

Defendant moves to dismiss the suit pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Doc. 21. To survive a 12(b)(6) motion, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (quoting *Iqbal*, 556 U.S. at 678)). In ruling, the Court must

---

[1] Plaintiff's Complaint alleges Defendant breached its duty to **purchase** fuel under the Contract. The Court assumes Plaintiff uses "duty to purchase" as shorthand for "duty to accept fuel products on consignment." The Contract states that "[d]elivered stocks of petroleum products shall remain the property of Magness until sold in the regular course of business." (Doc. 17, p. 9). It does not contemplate Defendant assuming ownership of the fuel products at any point. The parties may dispute whether Defendant is obligated to continue selling Plaintiff's products, but there is no dispute as to whether Defendant must purchase Plaintiff's products.

The Court makes a similar assumption with respect to Defendant's use of the term "purchase." The Court construes Defendant's argument that the Contract does not obligate it to "purchase fuel" to mean Defendant contends the Contract does not obligate it to "accept fuel products on consignment."

"accept as true all facts pleaded by the non-moving party and grant all reasonable inferences from the pleadings in favor of the nonmoving party." *Gallagher v. City of Clayton*, 699 F.3d 1013, 1016 (8th Cir. 2012) (quotation marks omitted).

Still, the complaint must contain sufficient facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain mere "labels and conclusions" or "a formulaic recitation of the elements of the cause of action will not do." *Id.* A court is not required to "blindly accept the legal conclusions drawn by the pleader from the facts." *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir. 1990).

### III.   DISCUSSION

"In order to state a cause of action for breach of contract, 'the complaint need only assert the existence of a valid and enforceable contract between the plaintiff and defendant, the obligation of defendant thereunder, a violation by the defendant, and damages resulting to plaintiff from the breach.'" *Rabalaias v. Barnett*, 284 Ark. 527, 528–29 (1985) (quoting *Williams v. Black Lumber Co.*, 275 Ark. 144, 147 (1982)).

Where a claim relates to a written contract, the Court "consider[s] the language of the contract when reviewing the sufficiency of the complaint." *M.M. Silta, Inc. v. Cleveland Cliffs, Inc.*, 616 F.3d 872, 876 (8th Cir. 2010). A court "may dismiss a complaint based on a contract if the contract unambiguously shows that the plaintiff is not entitled to the requested relief." *Intelsat USA Sales Corp. v. Juch-Tech, Inc.*, 935 F. Supp. 2d 101, 108 (D.D.C. 2013) (quoting *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 315 (S.D.N.Y. 2002)). "If an amended complaint's breach-of-contract claim conflicts with the plain language of

3

the contract, the contractual language controls." *Neubauer v. FedEx Corp.*, 849 F.3d 400, 405 (8th Cir. 2017).

The parties propose competing interpretations. Defendant contends that the Contract does not require it to continue accepting fuel products from Plaintiff. Instead, Defendant explains, the agreement merely "prevents Kash from obtaining fuel elsewhere." (Doc. 33, p. 2). Because no affirmative obligation exists, there is no breach— and thus, as a matter of law, Plaintiff is not entitled to the relief sought. Plaintiff argues to the contrary. It contends the Contract does indeed impose an obligation on Defendant to obtain and sell Plaintiff's fuel products and points to language that requires Defendant to "conduct the motor fuel operations responsibly" and "promote diligently Magness' motor fuel business at the Station." (Doc. 17, p. 10).

At this disposition, the Court need only determine whether the contractual text unambiguously establishes Plaintiff is not entitled to the relief sought. *See Roberts v. Bd. of Educ.*, 25 F. Supp. 2d 866, 868 (N.D. Ill. 1998). To do so, the Court relies on those principles set forth by the Arkansas Supreme Court:

> The first rule of interpretation of a contract is to give to the language employed the meaning that the parties intended. In construing any contract, we must consider the sense and meaning of the words used by the parties as they are taken and understood in their plain and ordinary meaning. The best construction is that which is made by viewing the subject of the contract, as the mass of mankind would view it, as it may be safely assumed that such was the aspect in which the parties themselves viewed it. It is also a well-settled rule in construing a contract that the intention of the parties is to be gathered, not from particular words and phrases, but from the whole context of the agreement.

*Singletary v. Singletary*, 2013 Ark. 506, 10 (2013) (quoting *Wal–Mart Stores, Inc. v. Coughlin*, 369 Ark. 365, 371 (2007)). Furthermore, where a contract is susceptible to

more than one interpretation, Arkansas law favors the construction that will render it valid. *See Price v. Willbanks*, 2009 Ark. App. 849, 4 (2009).

The Contract is ambiguous. The agreement states that "Consignee hereby agrees to arrange for the sale of motor fuels consigned by Magness," and it defines consigned goods as "[a]ll gasoline and diesel fuel products delivered by Magness." (Doc. 17, p. 7). Parsing the words carefully, the Contract could be construed to only require resale of those fuel products already delivered by Magness. That would support Defendant's proposed interpretation. But such a reading seems at odds with the "whole context of the agreement." Plaintiff agreed to pay all conversion costs to rebrand Defendant's premises, as well as "$25,000 upfront money [to Defendant] for the exclusive contract rights to supply to said location." *Id.* at p. 9. That's a substantial investment—and one that makes little sense if Plaintiff understood the contract to allow Defendant complete discretion to cease accepting fuel.

Yet Plaintiff's proposed construction also raises issues. While the Contract does seem to contemplate an ongoing distributor-retailer relationship between the parties, it does not, as Defendant notes, expressly require Defendant to sell Plaintiff's fuel products. That's a rather critical provision to omit.[2] Further, the obligations imposed on Defendant and cited by Plaintiff fall under "Section 6 (Trademarks)." *See id.* at p. 10. Plaintiff argues that these provisions represent stand-alone obligations. But it's also reasonable to read

---

[2] In fact, the parties' failure to specify quantity or identify a mechanism by which the Court may imply a quantity term raises concerns about contract formation in the first place. *See Bostic v. Stanley*, 2020 Ark. App. 365, 5–6 (2020) ("To be enforceable, a contract's terms must be reasonably definite and certain. The terms are reasonably certain if they provide a basis for determining the existence of a breach and for awarding an appropriate remedy." (internal citations omitted)). Here, such a determination requires further factual development.

this section as attaching only to the extent Defendant continues accepting fuel products from Plaintiff.

Defendant next argues that even if the Contract imposes some obligation to continue selling Plaintiff's products, Defendant's conduct does not constitute a breach. According to Defendant, any purported obligation would only require it to accept Plaintiff's delivery of consigned goods. Because Defendant has not rejected a delivery, it has not in fact breached the contract. This, however, is a factual question. The Amended Complaint alleges that "Kash's Corner . . . has refused to recommence purchasing fuel from Magness Oil and to use the Valero credit card processing system, as required by the Contract."[3] Given the Court's construction of "purchase" to mean "accept products on consignment"—an inference that benefits both parties—the Amended Complaint sufficiently alleges a breach.

## IV. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss (Doc. 21) is **DENIED**.

**IT IS SO ORDERED** on this 31st day of May, 2022.

_____
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE

---

[3] The Court cannot find the Complaint sufficiently states a claim with respect to Defendant's obligation to use the Valero credit card processing system product. The Court finds no reference to "Valero" or a "point-of-sale system" in the Contract. *See* Doc. 17, pp. 6–7.

This does not, however, change the Court's analysis with respect to Defendant's motion. Plaintiff adequately alleges another breach—Defendant's refusal to continue carrying Plaintiff's products.p